Fuller *v.* Fullerton.

---

[FRANKLIN GENERAL TERM, July 5, 1852. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]

---

### FULLER *vs.* FULLERTON and others.

An action upon the official bond of a town superintendent of common schools must be brought in the name of the supervisor, to whom the same was given, or to his successor in office. It cannot be brought in the name of a subsequent town superintendent of schools.

THIS was an action commenced by the plaintiff as superintendent of common schools in the town of Athol, before a justice of the peace of Warren county. The complaint averred that at the annual town meeting in the the town of Athol, in said

county, in April, 1847, Edward Fullerton, one of the defendants, was duly elected superintendent of common schools of said town of Athol, and that afterwards, on the 12th of April, 1847, for the purpose of enabling him to enter upon the duties of his office, he as superintendent, and the other defendants as sureties, executed a bond or writing obligatory, (then) on file in the town clerk's office of Athol, to the supervisor of said town of Athol, David M. Cameron, conditioned for the faithful application and legal disbursement of all the school moneys coming into his (Fullerton's) hands as such town superintendent during his term of office. The complaint further alledged, that Fullerton, as such town superintendent, received into his hands a large sum of money, which he had neglected and refused to apply and disburse, and that the plaintiff, as his successor in office, was the legal owner of the bond, and brought this action on said bond in his own name, and demanded of the defendant the sum of $100, being the amount of money not disbursed or paid over by Fullerton. The defendants in their answer objected, in the first place, that the action was not maintainable in the name of the superintendent, and that it should have been brought in the name of the supervisor, to whom the bond was given, or to his successor in office, the then supervisor of the town. This was overruled by the justice, and the defendants answered, setting up the statute of limitations, and denying each and every allegation in the complaint, and averring that they were not liable for any moneys in the hands of Fullerton after the expiration of one year from the time of his election, or the date of the bond, and also that they gave notice to the supervisor and collector of the town not to pay over any money to Fullerton, before any money was paid over to him, as they would not be answerable for the faithful disbursement of any money by him. The plaintiff took issue on the answer of the statue of limitations, and denied that the other allegations in the answer were any defense to the action. On the trial of the cause it was admitted, that the money claimed was in Fullerton's hands up to the first of May, 1848. The bond was produced, and the execution thereof proved. It was proved by Fullerton himself, that he was elected superin-

Fuller *v.* Fullerton.

tendent for one year, in April, 1847 ; that in March, 1848, and before the annual town meeting of that year, he received as such superintendent from the county treasurer of Warren county the sum of $299,30, that of this sum over $100 remained in his hands, which he had never disbursed or paid over, although it had been demanded of him by the plaintiff since his election to the office. Fullerton's term of office would have expired in April, 1848, but by the act of 1847 he continued to hold his office till the 1st day of November of that year. The money was in his hands until August, 1848. It appeared in evidence, on the part of the defendant, that the collector of Athol was notified by one of the bail, and that he at his request notified the supervisor and county treasurer in February, 1848, and before Fullerton received any money, not to pay any money over to him, as they, the bail, would not be responsible or answerable for its faithful application or disbursement by him. The cause was tried by a jury, who rendered a verdict for the plaintiff for $100, for which sum, with $5 costs, the justice rendered judgment against the defendants on the 6th of May, 1850. The defendants appealed to the Warren county court, and the judge of that county certified the appeal to this court.

*Wm. Hay,* for the respondents.

*Ira A. Paddock,* for the appellants.

*By the Court,* C. L. ALLEN, J. There were several objections taken in the court below, but which, as they are not insisted upon here, I do not deem it necessary to notice. The main objection urged is that the action should have been brought by and in the name of David M. Cameron, the supervisor, to whom the bond was executed, or in the name of his successor in office. It is argued in answer to this objection, that the superintendent is the proper plaintiff, as he is the receiving and disbursing officer, and entitled to the possession of the money. The 1st R. S. 3d ed. 531, § 34, of the act in relation to public instruction, enacts, that there shall be annually elected in each of the towns of this state, at the same

time, and in the same manner that other town officers are chosen, an officer to be denominated, " Town superintendent of common schools," who shall be subject to all duties and liabilities imposed upon him. The section further declares as follows : " It shall be his duty, within ten days after his election, to execute to the supervisor of his town, and file with the town clerk, a bond with one or more sufficient sureties to be approved of by said supervisor by indorsement over his signature, on said bond, in the penalty of double the amount of school money, which his town receives from all sources during the year preceding that for which he shall have been elected, conditioned for the faithful application and legal disbursement of all the school money coming into his hands." The fifth subdivision of section five authorizes and directs the superintendent " to apply for, and receive from the county treasurer, all money apportioned for the use of common schools in their town, and from the collector of the town, all moneys raised therein, for the same purpose, as soon as such money shall become payable or be collected." The 6th subdivision of that section directs them to apportion the school moneys received by them, among the several school districts of their respective towns, and the 8th subdivision authorizes and directs them " to sue for, and collect by their name of office, all penalties and forfeitures imposed in this title, and in respect to which no other provision is made, which shall be incurred by any officer or inhabitant of their town, and after deducting their costs and expenses, to add the money recovered, to the school moneys received by them, to be apportioned and paid in the same manner." The 48th section requires the town superintendent to make and transmit a report in writing to the county clerk, embracing a variety of items not necessary to enumerate. The 50th section prescribes the penalty of $10 for neglecting to make such report, and the loss of the share of the school moneys. The 51st section declares that when the money is lost by the neglect of the superintendent, the superintendent shall forfeit to the town the whole amount with interest. The 52d section makes it the duty of the supervisor to prosecute in the name of the town for such forfeit-

Fuller *v.* Fullerton.

ure, and to pay the money when collected to the several districts, in such manner as it would have been the duty of the town superintendent to have done. The 59th section of the same act (1 *R. S.* 536, 3*d ed.*) declares, "that every town superintendent of common schools, who shall refuse or neglect to pay over to his successor in office, any balance so found in his hands, or to deliver a statement of the appropriation, if any there be, of such balance, shall for such offense, forfeit the sum of $100 ;" and section 60 enacts, that "it shall be the duty of such successor in office to prosecute without delay, in their name of office, for the recovery of such forfeiture, and to distribute and pay the moneys received, in the same manner as other school moneys received by them." Section 61 provides, that "such successor in office *may* bring a suit in their name of office, for the recovery with interest, of any unpaid balance of *school moneys, that shall appear to have been in the hands of any previous superintendent on leaving his office,* either by the accounts rendered by such town superintendent, or by other sufficient proof." The superintendent against whom this action is brought, was the last one elected under the act I have just been reviewing ; but as he held his office, under the amendatory act of 1847, until November, 1848, and as some of the provisions of that amendment may apply or serve to give a proper construction to some of those of the orignal act, it may be well to review a few of them. The 3d section of the amendatory act provides for the election of a superintendent, and for his executing a bond with sureties to the supervisor of the town, as in the original act. The fifth and eighth subdivisions of section 8 remain as before. The 19th section of the amended act requires a report from the town superintendent like the 48th section of the act amended. The 20th, 21st and 22d sections declare the penalty and the forfeiture of the school money as before. The 23d section enacts, that when the share of the school money apportioned to the town shall be lost to the town, by the neglect of the town superintendent, he and *his sureties* shall be liable for the full amount so lost, with interest, and the 24th section makes it the duty of the supervisor to prosecute without delay, in the name of the

town, for such forfeiture, and to pay the moneys as directed in the 52d section; and the 28th section authorizes, but does not require, the town superintendent to bring a suit in his name of office, to recover the amount of any balance in the hands of his predecessor. From all these sections it would appear that the town superintendent is to prosecute for and collect all forfeitures and penalties imposed by this title, where no other provision is made. But by requiring the bond with sureties to be made to the supervisor of the town, it seems to me that it was intended that the remedy should follow the bond, and that any action upon it must be commenced in the name of the supervisor to whom it was given. This construction is strengthened by the enactment of the 24th section of the act of 1847, (*Laws of* 1847, *p*. 688,) which requires the supervisor of the town to sue in the name of his town, and to pay over the money when collected as before stated. The bond is given to secure the faithful disbursement and application of the money received by the superintendent. Suppose he appropriated the money to his own use before the expiration of his term of office, as in the present case, must the town wait until his removal, or until his successor is elected, before an action can be maintained upon the bond? clearly not. One object in making the bond to the supervisor undoubtedly was, to provide an immediate remedy by action in the name of the supervisor, on behalf of the town or the school districts within its limits. There is no authority given by the statutes to the town superintendent to sue his predecessor and his sureties on the bond given to the supervisor and his successors in office. The several sections above cited, authorizing him to sue, confine him to an action against his predecessor alone, and do not include his sureties, and the only section making the sureties liable with the superintendent, directs the supervisor to sue, and not the superintendent. In *Jansen* v. *Ostrander*, (1 *Cowen*, 670,) it was said, in a suit on a bond given by a collector and his sureties to the supervisor, that the right to sue was incident to the office, and passed to his successor. And in *Armine* v. *Spencer*, (4 *Wend.* 406,) the same principle was held. It was remarked that it was because all the right

Fuller *v.* Fullerton.

of a predecessor had devolved by law upon a successor, that the latter, and he alone, could maintain a suit, on a bond given to his predecessor in office. In *Lawton* v. *Erwin and others*, (9 *Wend.* 233, 238,) it was held that debt would not lie in the name of the party aggrieved, on a constable's bond given to the people. In *Skellinger* v. *Yendes*, (12 *Wend.* 306,) it was held that an action would lie in the name of the party aggrieved, upon an instrument in writing signed by a constable and his sureties, engaging to collect and pay over all executions that were collectable; and that the signers were accountable to all persons, in whose favor any execution might issue, for the damages, *if not paid over*. The court said they had been liberal in the construction given to such an instrument, to promote the beneficial objects of the legislature; that the statute in such case did not give the *form* but only the substance of the security, and that if given to the people, an action of debt might be maintained in the name of the people, for the benefit of the person entitled to an action, or covenant in the name of such person. Under that statute the condition was required to be, among other things, to pay to such person as should have executions in the hands of the constable, all moneys which should come into his hands as such constable. Here the direction in the statute is that the bond be executed to the supervisor of the town; clearly intending that the action shall be brought in his name. It is said that the plaintiff in this case is the owner of the bond, and the proper person to bring the action under section 111 of the code; as he is to receive and disburse the money when collected. This would be so, if the plaintiff had sued his predecessor alone under the 28th section. But where the action is required to be brought by the supervisor, as in this case, he is required to distribute and pay the money which he shall collect, to the districts, parts of districts or separate neighborhoods of the town, in the same manner as it would have been the duty of the town superintendent to have distributed and paid them if received from the county treasurer. I am satisfied that section 111 was not intended to apply to this class of cases, but that it comes within the exception meant and intended in section 113.

---

Such a construction was given in *Boss* v. *Seemon,* (2 *Code R.* 1.) *And see Grinell* v. *Schmidt,* (3 *Id.* 19.)

I regret to be under the necessity of coming to this conclusion, as the cause of action is clear, the town superintendent having made use of the money, which he should have appropriated in the manner required by his duty, and the condition of his bond. There is nothing in the other objections taken by the defendants.

But as the action was misconceived, the judgment of the court below must be reversed.